HERGET, Judge.
The Southern Fleet Leasing Corporation on printed forms supplied by it entered into what is denominated a “contract of lease” by which, on December 11, 1955, it delivered to Highland Park Lumber Company, Inc. (the name of which was subsequently changed to Airline Builders Service, Incorporated) a Ford express type automobile for the “basic term of one year from date of delivery of vehicle to lessee and month to month thereafter, until terminated as hereinafter provided.” And, on February 3, 1956,' entered into a similar agreement with said corporation by which it placed in possession of Highland Park Lumber Company, Inc. (now Airline Builders Service, Inc.) a Ford cab and chassis type vehicle. At the end of each of said contracts there was placed in typing identical provisions with the exception of date, reading as follows:

“Guaranty Agreement

“In consideration of Southern Fleet Leasing Corporation entering into the foregoing contract of lease with Highland Park Lumber Co., Inc. the undersigned warrants and guarantees the full and faithful performance by the said Lessee of its obligations under the terms of the said lease, it being *460 understood and agreed that without this guaranty, Southern Fleet Leasing Corporation, would he unwilling to enter into the said agreement of lease with the said Lessee.
“Baton Rouge, Louisiana
“December 11, 1955.
“s/ Earl P. Broussard
“s/ Lester J. Jones.
“Witnesses:
“s/ • Billie Baxter
“s/ Leonard Hurst”
The contract dated December 11, 1955 provides jn.part:
“For the purposes of the computations provided for in this lease, the base amount shall be $2166.04 including equipment as indicated above.
“Monthly rental shall be $54.15, payable monthly in advance.
“For; the purposes of the computations provided for in this lease, the parties agree that depreciation shall accrue at the rate of two (2) % of the báse amount for each month for which rental is. paid by Lessee.
“Final Accounting Provisions, (a) Upon expiration or termination of this lease or any' extension thereof, the leased vehicle shall be sold, and Lessor shall furnish to Lessee within twenty (20). days after such sale, a statement of the net''proceeds of the sale. Net Proceeds is defined as the amount received from the sale of the vehicle, less Fifty Dollars ($50.00), and also less any actual out of pocket expenses incurred by Lessor in connection with effecting such sale. After such sale, the amount by which the net proceeds exceeds the base 'amount less accrued depreciation shall be' divided equally between Lessor and Lessee.
“(b) At the expiration of the basic term of- this lease, if it appears that the available value of the leased vehicle, is less than the base amount
less accrued depreciation computed under the provisions of this lease, Lessee shall have the option of extending this lease for an additional period on a month to month basis at the same monthly rental and under the same terms and conditions as the basic term.” (Italics by the Court.)
The instrument dated February 3, 1956 provides that the base amount shall be $3,800 with monthly rentals of $95 payable monthly in 'advance and in all other respects the contracts are similar.
In its petition Plaintiff alleged that seven monthly payments for the months of February, 1959 through August, 1959 were unpaid, which total it computed as to the December 11 contract as being $294.14 and on the contract dated February 3, 1956 $572.05. From these dates it is apparent that the basic terms of the leases had expired and that the leases, if in effect, had been continued by the convention of the parties in exercising the option granted to continue the leases on a month to month basis. The basic figures given of $54.15 and $95 multiplied by seven do not result in the totals which Plaintiff listed as being due for unpaid rental, though he sets forth in the petition that to the monthly rental is to be added “the use tax.” Plaintiff further alleges that under the terms of the lease contracts the lessee was obligated upon the termination of the contracts to pay the base amount of the value of the vehicles less credits to be applied at the rental price per month and that for the contract dated December 11, 1955 this sum amounts to $309.96 and for the contract dated February 3, 1956 this sum amounts to $582. The totality of these figures amounts to the sum of $1,758.15 for which Plaintiff asked for judgment against Airline Builders Service, Inc., Earl P. Broussard and Lester J. Jones, in solido, together with legal interest and 15'% attorney’s fees and, in addition, sued out a writ of sequestration by which the cars were sequestered. By supplemental petition filed on. October 22, 1959, Plaintiff *461 alleged that the vehicles had been surrendered voluntarily to Plaintiff by “Defendant” and that said vehicles had been sold by which credits of $200 and $575, respectively, had been made, or a total of $775 and in the supplemental petition it dismissed the sequestration previously issued.
To the petitions defendants Earl P. Broussard and Lester J. Jones filed exceptions of no cause or right of action and, for oral reasons assigned on November 30, 1960, the Trial Judge rendered judgment sustaining the exception of no cause or right of action filed by Earl P. Broussard, which judgment was signed on January 3, 1961. From this judgment Plaintiff appealed.
The basis for Exceptor’s no cause or right of action was:
“a. The original lease sued upon was given for a one year term and it was extended without the consent of the surety, thereby releasing the surety under the provisions of Article 3063 of the Loitisiana Civil Code.
“b. By the act of the plaintiff, the defendant, as surety, has been discharged because, by virtue of the act of the plaintiff, the surety’s subrogation to all of the rights and privileges of the creditor can no longer be operated in favor of the surety. The petition as amended shows on its face that the surety (Plaintiff) has disposed of the leased properties without the consent or knowledge of the defendant.”
LSA-Civil Code, Article 2678 provides:
“All corporeal things are susceptible of being let out, movable as well as immovable, excepting those which can not be used without being destroyed by that very use.”
Though counsel for Plaintiff refers to Articles 2688, 2689 and 2690 of the LSA-Civil Code as authority for the fact that reconduction of a lease takes place of right where the lessee remains in possession of the leased property, we deem these provisions of the Civil Code inapplicable inasmuch as Article 2688 has reference to reconduction of the lease of a predial estate; Article 2689 refers to the reconduction of the lease of a house or a room, and Article 2690 specifically refers to these two articles. We have not been cited to, and research on our part has not disclosed, any article of the Civil Code providing for the reconduction of a lease of a motor vehicle.
Counsel for appellant maintains that his right to hold exceptors is founded on LSA-Civil Code Article 3035, providing:
“Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not.”
He maintains that the leases by which Defendant obtained the automobiles are for express terms inasmuch as provision is made for the continuation of the leases from month to month as long as the lessee retained possession of the leased vehicles or until terminated.
LSA-Civil Code Article 2727 provides:
“The lease ceases of course, at the expiration of the time agreed on.”
We are of the opinion that the provision “This lease shall be for a basic term of one year from date of delivery of vehicle to lessee and month to month thereafter, until terminated as hereinabove provided” when construed with other provisions of the instrument means nothing more than that the leases are for a period of one year from their respective dates with the option given to lessee to renew the leases from month to month thereafter by retaining possession of the vehicles. There is no binding obligation on the part of the lessee to retain the vehicles for any period after the expiration of the year but it is granted an option to *462 continue the leases by convention by retaining possession of the vehicles.
LSA-Civil Code, Article 3063 provides:
“The prolongation of the terms granted to the principal debtor without the consent of the surety, operates a discharge of the latter.”
In the case of Fasnacht v. Winkelman, 21 La.Ann. 727 where a lease was made for a period of one year and the lessee was given an option of renewing the lease for a period of four years and where the defendant intervened in the act and bound himself jointly and in solido with the lessee for the punctual payment of the rent and for the performance of the conditions of the lease, the Court held that the exercise of the option was a renewal of the lease and that the defendant having bound himself only as a principal obligor on the lease, not having agreed to the renewal of the extension of the lease, was not bound on the extended lease.
In Hincks v. Hoffman, 12 Orleans App. 218, where a lease provided that “ * * * the omission of either the lessors or lessee to give written notice * * * two months prior to the expiration of this lease, of his or their intention not to renew it shall operate its renewal upon the same terms and conditions for the period of one year from the date of its expiration.”, the Court held where the rental was paid for the initial year of the lease and thereafter automatically renewed, by the failure to give written notice that a party who signed the lease as surety in solido with the lessee was discharged, holding that the security or surety did not extend to the obligation resulting from the lease being prolonged. Similarly, under the provisions of the contracts before us, the leases were for a period of one year only with the option on the part of the lessee to extend the period from month to month upon retaining possession of the vehicles. Such prolongation was without the' consent of the surety and he was thereby discharged from the liability for the extended term. Moreover, Article 3039 of the LSA-Civil Code providing:
“Suretyship can not be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract.”
requires that the contract of suretyship be strictly construed. See Basso v. Export Warrant Company, 194 La. 303, 193 So. 654 and cases therein cited. Accordingly, if the instruments on which Plaintiff sued be contracts of lease, the surety has been discharged by the renewal without his consent.
Alternatively appellee argues that the surety has been discharged by the act of the appellant, the creditor, in accepting the vehicles and selling same destroying his right of subrogation and therefore relieving him from liability. Under the provisions of the instruments by which possession of the vehicles was granted to Airline Builders Service, Incorporated by Plaintiff there is a serious question as to whether or not the instruments were not in fact sales, there being provisions in the contracts requiring the lessee not only to pay a monthly rental and maintain and repair the vehicles, but at the termination of the lease it is obligated to pay “the base amount of the value of the vehicles” less certain credits. This obligation does not appear to be optional on the part of lessee. Assuming arguendo that the contracts in question are not actually leases but sales (such a decision is not necessary in determining the surety’s liability for his obligations, concerning the facts of this case, are identical, whether we find the contracts to be leases or sales), the Plaintiff by voluntarily accepting the vehicles from the vendee has, under LSA-Civil Code Article 3061, providing:
“The surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privi *463 leges can no longer be operated in favor of the surety.”
discharged the surety for he has destroyed the right of subrogation to which this article entitled him.
Accordingly and for these reasons the judgment is affirmed.
Affirmed.